UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINTON JOSEPH BARNER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:21-cv-00264-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Docs. 21, 23, 25) |

Plaintiff Clinton Joseph Barner ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 21, 23, 25). Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.

I.   **BACKGROUND**

**A. Administrative Proceedings and ALJ's Decision**

On May 11, 2018, Plaintiff filed a Title II application for disability insurance benefits and

---

[1] Based on the parties' consent to magistrate judge jurisdiction for all purposes, this action was reassigned on January 28, 2022, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10).

Title XVI application for supplemental security income. (AR 13, 244-51). Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 68-137, 159-61). On April 27, 2020, ALJ Cynthia Hale held a hearing, during which Plaintiff, represented by counsel, and an independent vocational expert testified. (AR 33-67). The ALJ issued her decision on August 28, 2020, finding Plaintiff not disabled. (AR 14-27). On January 7, 2021, the Appeals Council declined Plaintiff's request for review. (AR 5-7).

In her decision, the ALJ engaged in the five-step sequential evaluation process set forth by the Social Security Administration. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 17, 2017, the alleged onset date. (AR 17). At step two, the ALJ determined that Plaintiff had "the following severe impairments: a history of Ewing's sarcoma, in remission; a history of left tympano-mastoidectomy with revision with severe to profound left mixed hearing loss; left facial palsy; intellectual disability; learning disability; and non-epileptic seizures." (AR 17).

At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Of relevance to the arguments before the Court, the ALJ specifically considered Plaintiff's seizures under listing 11.02 and intellectual disability under listing 12.05 and found Plaintiff did not meet the criteria for either listing. (AR 18-20).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to: "perform a full range of work at all exertional levels but with the following non-exertional limitations: never climb ladders, ropes, or scaffolds; no more than occasional balancing; only have unilateral hearing and must avoid a noisy environment; needs to avoid concentrated exposure to loud noise, vibration, or work hazards, such as moving machinery and unprotected heights; limited to simple, routine, and repetitive tasks, no production rate or constant motion job tasks; no job tasks that require reading more than simple notes or signs and no more than basic math." (AR 21).

In determining Plaintiff's RFC, the ALJ considered Plaintiff's symptom testimony, finding "that the [Plaintiff's] medically determinable impairments could reasonably be expected

1  to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity,
2  persistence and limiting effects of these symptoms are not entirely consistent with the medical
3  evidence and other evidence in the record." (AR 22). The ALJ noted that while Plaintiff had a
4  history of Ewing's sarcoma, he responded well to treatment and remained in remission. (AR 22).
5  Plaintiff also has facial palsy but still has fluid speech, which was clear and coherent on exam.
6  (AR 22). Due to "long-term complications" impacting Plaintiff's hearing in his left ear, the ALJ
7  limited his exposure to loud noise but found no other limitations were warranted. (AR 22). The
8  ALJ cited Plaintiff's "normal hearing abilities in his right ear and excellent word discrimination
9  testing." (AR 22).

10  As to Plaintiff's seizures, the ALJ acknowledged Plaintiff's reports of episodes of
11  dizziness and loss of balance, but noted that "[i]magining of the head was essentially
12  unremarkable, aside from small cavernous malformations." (AR 22). The ALJ also noted that
13  Plaintiff's balance fluctuated, and his gait was at times unsteady. (AR 22). Accordingly, the ALJ
14  included limitations regarding heights, balancing, and the use of machinery. (AR 22). Based on
15  Plaintiff's general improvement with treatment and physical therapy, the ALJ found additional
16  limitations were not warranted. (AR 22-23).

17  The ALJ also discussed Plaintiff's intellectual disability and learning difficulties, noting a
18  history of special education, a fourth grade reading level, and a full-scale IQ score of 70. (AR
19  23). Plaintiff also had difficulty recalling the number of states or the current president and
20  completing multi-step tasks. (AR 23). Based on this evidence, the ALJ included limitations
21  reflected in the RFC but found no additional limitations were warranted based on records
22  indicating he was alert, attentive, and cooperative during exams; had clear, coherent, and well-
23  organized thoughts; had not been hospitalized or had suicidal ideation; and had previously been
24  able to work despite his conditions. (AR 23).

25  Additionally, the ALJ considered medical opinions in the record. The ALJ found the state
26  agency consultants' opinions persuasive as to both Plaintiff's physical and mental limitations,
27  concluding the opinions were "supported by detailed explanations and are consistent with the
28  overall evidence." (AR 23). The ALJ also found persuasive the opinion of a consultative

3

examiner. (AR 24). Despite finding these opinions persuasive, the ALJ included additional limitations based on Plaintiff's subjective complaints. (AR 24).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Finally, at step five, she found that, per testimony of the vocational expert, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as grocery bagger, lab cleaner, and housekeeping cleaner. (AR 25-26). Thus, Plaintiff had not been under a disability from September 17, 2017, through the date of the decision. (AR 26).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id*. at 1159) (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." (*Id*.) (quotation and citation omitted). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Healy v. Astrue*, 379 Fed. Appx. 643, 645 (9th Cir. 2010). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. (*Id.*).

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account

of an error that is harmless. (*Id.*). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." (*Id*). (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. (*Id.*). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. (*Id.*).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### III.   ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his

applications. (Doc. 1). Plaintiff raises the following arguments:

1. The ALJ's determination that his seizure disorder, either alone or in combination with his borderline intellectual functioning, did not meet or equal listings 11.02 or 12.05 was not supported by substantial evidence. (Doc. 21 at 2).

2. The mental RFC is not supported by substantial evidence in the record. (*Id.*).

3. The ALJ committed harmful error by failing to provide "clear and convincing" reasons for rejecting symptomology evidence. (*Id.*).

**A. Whether the ALJ Properly Concluded Plaintiff Failed to Meet or Equal Listings 11.02 or 12.05**

Plaintiff first challenges the ALJ's step three conclusion that he did not meet or equal a listing. "The listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity." *Kitchen v. Kijakazi*, 82 F.4th 732, 741 (9th Cir. 2023) (quotation and citation omitted). For an impairment to meet a listing, the claimant "must meet *all* of the specified medical criteria" for the listing. *Id.* (emphasis in original) "If an impairment does not meet a listing, it may nevertheless be medically equivalent to a listed impairment if the claimant's symptoms, signs, and laboratory findings are at least equal in severity to those of a listed impairment." *Id.* However, "a claimant cannot base a claim of equivalence on symptoms alone" and "the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing." *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020). "The burden is on the claimant to provide evidence that her impairments meet or equal a Listing at step three of the sequential evaluation process." *Fleming v. Comm'r of Soc. Sec. Admin.*, 500 F. App'x 577, 579 (9th Cir. 2012) (citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).

Plaintiff argues there is "substantial objective evidence of record that [his] seizure disorder meets the requirements of listing 11.02B because the record shows he "started suffering from seizure activity every day, for at least three consecutive months while adhering to prescribed increasing dosages of Keppra and continuing during the period at issue, that is, after he began prescribed treatment, in December 19, 2017 through the latest treatment record per the

7

requirements of Listing 11.02B and 11.00(C)(H)(2, 4)." (Doc. 21 at 8 (emphasis and record cites omitted)). Plaintiff argues the "ALJ harmfully and erroneously 'cherry picks' evidence and misinterprets the record in order to imply that Mr. Berner's seizure activity was completely ameliorated when [he] was 'compliant' with medication." (*Id.* at 9). Even if Plaintiff did not meet listing 11.02(b), he argues the ALJ further harmfully erred "by failing to discuss whether she considered … the severity of [his] severe intellectual and learning impairments in combination with his severe seizure disorder symptomology in relation to Listings 11.02B and 12.05," and asserts that based on the "extensive evidence" that he had "significant limitations in his ability to function independently," the ALJ "had a duty to call a neurological ME or contact Mr. Barner's treating neurologist" to assist in determining whether he met the listings. (*Id.* at 11-12).

In response, the Commissioner argues Plaintiff failed to meet his burden of showing he met or equaled either listing 11.02B or 12.05. (Doc. 23 at 4). As to listing 11.02B, the Commissioner asserts the listing applies only to epileptic seizures, but the ALJ concluded Plaintiff suffers from non-epileptic seizures and "the record is replete with objective findings casting doubt as to whether they were in fact related to or caused by epilepsy." (*Id.* at 5-6). The Commissioner indicates the ALJ "did find that Plaintiff did 'not have an impairment or combination of impairments that meets or medically equals the severity of' a Listing" and Plaintiff has not shown that the ALJ had a duty to further develop the record. (*Id.* at 9-10).

Plaintiff replies that "[d]espite Defense's claim to the contrary …, there is substantial evidence of record that Mr. Barner's seizure disorder meets or equals Listing 11.02B." (Doc. 25 at 2). Plaintiff argues the ALJ did not rely on his seizures being non-epileptic in concluding he did not meet the listing, and "the Defense is incorrect that [he] was diagnosed with only psychogenic, non-epileptic seizures." (*Id.* at 2-3).

Listing 11.02B applies to epilepsy characterized by dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.02B. Under the listings, epilepsy is defined as "a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical

activity in the brain." *Id.* at § 11.00H1. However, "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02" and these seizures are evaluated as mental disorders. *Id.* "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances may occur." *Id.* at § 11.00H1b.

Here, the ALJ concluded Plaintiff's seizures did not satisfy the criteria of the listing because medication helped Plaintiff's seizures "when he was able to take it consistently;" EEG results "showed occasional isolated frontally predominant spike and wave complexes, but no ictal changes with any of the reported clinical events;" Plaintiff's coordination and balance improved with physical therapy; and Plaintiff ambulated independently and had mostly normal musculoskeletal strength. (AR 18). The records cited by the ALJ include notes of Plaintiff's report that Keppra "helped a lot" and reduced his episodes, and providers' observations that Plaintiff ambulated normally without an assistive device, had negative Romberg and normal musculoskeletal strength, and benefited from physical therapy. (AR 708, 750, 833-34, 844, 898, 920-21, 923, 928, 948).

The Court concludes Plaintiff has not met his burden of showing that he met or equaled listing 11.02B. As correctly noted by Defendant (Doc. 23 at 4-5), earlier in the decision the ALJ categorized Plaintiff's seizures as "non-epileptic" (AR 17), such that listing 11.02—applying to *epileptic* seizures—does not apply. Additionally, while Plaintiff points to evidence he asserts supports that he continued to have seizures multiple times a day while on medication such that he meets the criteria of the listing, the records cited largely reflect notes of Plaintiff's own reports concerning the duration and frequency of the seizures, rather than objective medical evidence supporting such a conclusion. (*See, e.g.,* AR 707-08; 834-35, 836-37, 840, 843, 1001-02). In some of the same records, Plaintiff's providers expressed doubts as to whether Plaintiff was indeed experiencing seizures. (AR 845 ("He had a staring spell in front of me that did not seem epileptic."); 903-05 (ordering repeat EEG to confirm "still no evidence of seizure" and indicating episodes "may not be seizure" but rather "symptoms may be related to the balance issues"); 944-

9

45 (Plaintiff's mother's description of episode "confirm[ed] previous descriptions that call into question the likelihood that these events are epileptic in nature" and noting epilepsy was "clinically unclear"). Based on the medical records, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet or equal listing 11.02B. Even if the evidence Plaintiff cites is enough to warrant a different conclusion, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Concerning Plaintiff's allegation that the ALJ failed to consider whether the combined effects of his intellectual disability and seizures equaled listings 11.02B and 12.05, the Court finds no error. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. Here, Plaintiff's counsel submitted a brief prior to the hearing arguing Plaintiff met listing 11.02B and argued at the hearing that listing 12.05 should also be considered because of Claimant's IQ and inability to adapt to self-care. (AR 39, 236-40). But at no point did he argue the ALJ should consider the *combined* effects or address how the effects established equivalence. Even before this Court, Plaintiff did not identify the criteria of listing 12.05 or argue how he met or equaled that criteria. Thus, the ALJ was not required to provide any more detailed discussion than that included in her decision. *Burch*, 400 F.3d at 683.

To the extent Plaintiff asserts the ALJ erred by failing to "call a neurological ME or contact [his] treating neurologist to make a determination regarding whether the combination of [his] severe seizure disorder and intellectual/learning disabilities would equal Listings 12.05 or 11.02B," this argument also fails. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, however, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation.

Accordingly, the ALJ did not err in concluding Plaintiff did not meet or equal listings 11.02B or 12.05.

**B. Whether Substantial Evidence Supports the Mental RFC**

Plaintiff next challenges the mental RFC assigned by the ALJ. A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see* 20 C.F.R. part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In determining a claimant's RFC, an ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quotations and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g).

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: never climb ladders, ropes, or scaffolds; no more than occasional balancing; only have unilateral hearing and must avoid a noisy environment; needs to avoid concentrated exposure to loud noise, vibration, or work hazards, such as moving machinery and unprotected heights; limited to simple, routine, and repetitive tasks, no production rate or constant motion job tasks; no job tasks that require reading more than simple notes or signs and no more than basic math.

(AR 21).

In support of the RFC, the ALJ provided a summary of the relevant records and the limitations she found supported by those records. As to Plaintiff's mental abilities, the ALJ noted that Plaintiff had "been diagnosed with an intellectual and learning disability," read at a fourth-grade level, complained of memory difficulties, and struggled to complete multi-step tasks. (AR 23, citing AR 691, 795, 879, 929). Additionally, the ALJ indicated the records reflected that Plaintiff had "a full-scale IQ score of 70," below average attentional processing of information, low-average perceptual reasoning, borderline working memory and processing speed, and "struggled to hold employment due to learning difficulties." (AR 23, citing AR 688, 691, 881). Thus, in setting forth the RFC, the ALJ limited Plaintiff to simple routine, and repetitive tasks

11

1    with no production rate or constant motion job tasks and no job tasks that require reading more
2    than simple notes or signs and no more than basic math.  (AR 23).

3    The ALJ also relied on medical opinions in formulating the RFC.  The state agency
4    consultants opined that Plaintiff "was able to understand, remember, and carryout simple
5    instructions; sustain concentration, persistence, and pace; interact with others; and maintain safety
6    awareness and respond appropriately to routine changes."  (AR 24, citing AR 68-101, 104-137).
7    A consultative examiner opined that Plaintiff would "not have difficulty performing simple,
8    repetitive tasks on a regular basis."  (AR 24, citing AR 875-83).  The ALJ found these opinions
9    persuasive based on indications in the record that Plaintiff was alert, attentive, and cooperative on
10   exam; his memory was intact, including recalling three of three objects; and his thoughts were
11   clear, coherent, and well organized.  (AR 24, citing AR 690, 879, 898, 1059).  However, despite
12   finding the opined limitations consistent with the overall evidence, the ALJ imposed additional
13   limitations based on the testing and subjective complaints.  (AR 24).

14   Plaintiff argues the mental RFC is not supported by substantial evidence because although
15   the ALJ found the opinions persuasive, "the ALJ stated that she was 'consider[ing] the testing and
16   subjective complaints' and based on her own review and interpretation of the records, adding
17   specific limitations regarding reading and math deficits."  (Doc. 21 at 12).  Plaintiff asserts "the
18   ALJ had a duty to further develop the record and send [him] for additional intellectual testing and
19   interpretation of that testing."  (*Id.* at 13).

20   The Commissioner responds that the ALJ appropriately "assessed an RFC based on the
21   objective medical evidence, improvement with treatment, medical opinion evidence, Plaintiff's
22   past work history and subjective symptoms, and third-party statements."  (Doc. 23 at 11).  The
23   Commissioner asserts that because "the RFC is a *legal*, not *medical* determination," "the RFC is
24   informed by the medical evidence but is not circumscribed by it, including medical opinions."
25   (*Id.* at 12).  Concerning whether the ALJ had a duty to develop the record further, the
26   Commissioner argues Plaintiff "failed to establish how or why that is so."  (*Id.*).

27   Plaintiff replies that while "the ALJ is the final arbiter of the MRFC/RFC decision, the
28   ALJ is not permitted to review evidence on her own and formulate a function-by-function

MRFC/RFC analysis, as the ALJ did here." (Doc. 25 at 10).

Based on the records cited by the ALJ, substantial evidence supports the assigned RFC. Plaintiff is correct that "[a]n ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1009-10 (E.D. Cal. 2017) (collecting cases). However, there is nothing in the ALJ's decision indicating that she interpreted raw medical data or relied on her own medical judgment in constructing the RFC. Nor is there anything suggesting to the Court that the record was ambiguous or inadequate as would be necessary to trigger the ALJ's duty to further develop the record. *See Mayes*, 276 F.3d at 459-60. Rather, the ALJ relied on the expert opinions and imposed limitations *greater* than those opined by the experts based on the subjective testimony and test results concerning Plaintiff's abilities. Because the additional limitations resulted in a narrower RFC than that considered by the experts, any alleged error in imposing the additional limitations was harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (finding "overinclusion of debilitating factors" in hypothetical to vocational expert that were not included in the ultimate RFC was "harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration").

Thus, Plaintiff's challenge to the mental RFC fails.

### C. Whether the ALJ Failed to Provide "Clear and Convincing" Reasons to Reject Symptomology Evidence

Plaintiff's final argument attacks the ALJ's consideration of his testimony regarding his symptoms. An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that this impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

   Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

   However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the ALJ's rational is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasonings as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

   Plaintiff argues the ALJ failed to provide "clear and convincing" reasons for rejecting his symptomology testimony because the ALJ summarized his "testimony, function reports and third party function reports in one portion of the decision and subsequently, absent any rational analysis to any specific symptomology testimony," summarized the seizure medical evidence before concluding the evidence was not consistent with the alleged limitations. (Doc. 21 at 13-14).

   In response, the Commissioner asserts "the ALJ accepted many of Plaintiff's symptoms and assessed multiple, robust limitations in the RFC to account for them" but also "reasonably concluded Plaintiff's claims as to his symptoms were otherwise inconsistent with the evidence." (Doc. 23 at 13). The Commissioner argues that substantial evidence supports the ALJ's treatment of Plaintiff's symptom testimony such that the decision must be affirmed. (*Id.* at 13-15).

   Plaintiff replies that "SSA law in this circuit is clear that Defense/Commissioner cannot attempt to remedy the ALJ's non-specific symptomology determination by pulling evidence from

the ALJ's *summary* of the medical record, *post hoc* and offering it as the ALJ's own 'proper' analysis of the relationship between testimony and medical evidence." (Doc. 25 at 10-11).

At the hearing, Plaintiff testified he was in the special education program throughout high school, with math and English being the most difficult for him. (AR 40-41). He last worked in 2017, having worked as a general laborer for almost a year. (AR 42). Plaintiff did not have difficulties with this position, but the job ended when he missed a day of work due to a seizure. (AR 43-44). He reported experiencing seizures ranging from small to big that resulted in confusion and difficulty walking afterwards. (AR 45-47). He began taking medication, which "actually helped" after increasing the dosage. (AR 48). He reported only being able to focus on television for approximately 24 minutes. (AR 52). When asked by the ALJ if any other problems beyond his seizures would affect his ability to work, Plaintiff answered no. (AR 55). He also told the ALJ that after a small seizure it took "maybe 30 seconds for [him] to just like regain [his] strength and consciousness and just continue on throughout the day." (AR 56). Additionally, Plaintiff reported having problems walking straight. (AR 59).

In her decision, the ALJ cited Plaintiff's testimony that he has difficulty walking and has multiple seizures with confusion and lightheadedness. (AR 21). The ALJ also recognized Claimant's allegations of limitations related to walking, talking, hearing, understanding, and following instructions contained in his function report, as well as reports of third parties. (AR 21, citing (5E, 4E, 17E, 19E, 14E, 15E, 18E, 20E). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22).

The ALJ proceeded to provide a summary of the medical evidence in support of the RFC and her treatment of Plaintiff's testimony. (AR 22-25). Specifically with respect to Plaintiff's seizures, the ALJ concluded:

> Given his dizziness and seizure episodes, the evidence supports that the claimant can never climb ladders, ropes, or scaffolds and needs to avoid concentrated exposure to vibration or work hazards, such

15

as moving machinery and unprotected heights. Due to difficulties balancing, the claimant is limited to no more than occasional balancing.

However, no additional limitations are supported and the claimant's statements about the intensity, persistence, and limiting effects of her [sic] symptoms are inconsistent with the evidence. The claimant had a normal electroencephalogram (8F/2). A provider noted that anti-epileptic therapy was efficacious (13F/10). Keppra helped when he was able to take it consistently (7F/5). Physical therapy helped improve the claimant's coordination and balance control (12F/4, 15F/31). He ambulated independently without any assistive device (7F/4, 15, 10F/15, 12F/1, 13F/3, 14F/1). The claimant also had mostly normal musculoskeletal strength (3F/12, 4F/25, 9F/10, 12F/2, 14F/1). Given the improvement with treatment and physical therapy, no additional limitations are supported in the residual functional capacity. Although, the claimant and multiple third-party statements indicated that the claimant was not able to be alone, he attended multiple exams throughout the relevant period without issue and improved with treatment.

Therefore, the evidence is not consistent with the extent of the alleged limitations. The claimant has also been diagnosed with an intellectual and learning disability. A provider noted that the claimant struggled to hold employment due to learning difficulties (1F/2). He has a history of special education services throughout his formal education (1F/5, 22E). Neuropsychological testing revealed a full-scale IQ score of 70 (1F/5). Testing of the attentional processing of information was in the below average range (1F/5). At another exam, testing revealed low-average perceptual reasoning and a borderline working memory and processing speed (9F/7). In addition, his reading ability was at the fourth grade level (1F/5). The claimant complained of memory difficulties as well (13F/4). He was able to discuss current events, but had difficulty recalling the number of states and the current president (9F/5). The claimant also had difficulty completing multi-step tasks (6F/14).

The evidence supports that the claimant is limited to simple, routine, and repetitive tasks. Due to processing speed and memory testing, the claimant can have no production rate or constant motion job tasks. As testing revealed that the claimant could read at a fourth grade level, the claimant can have no job tasks that require reading more than simple notes or signs and no more than basic math. However, no additional limitations are supported and the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence. The claimant was alert and attentive during exams (1F/4, 9F/5, 17F/4). He was cooperative on exam (1F/4, 9F/5). The claimant's memory was intact and he recalled three of three objects on exam (9F/5, 10F/15). His thoughts were clear, coherent, and well organized (9F/5). He has not been hospitalized for psychiatric reasons (9F/4). He also denied having any suicidal ideation (9F/4). Moreover, the claimant has been able to work in the past despite these conditions (3E/1). As such, the evidence is not consistent with the full extent of the alleged limitations to understanding and following

16

>instructions (5E). Therefore, no additional limitations are supported in the evidence.

(AR 22-23)

Review of the ALJ's decision reveals that despite finding Plaintiff's testimony was not entirely consistent with the medical evidence, the ALJ largely credited Plaintiff's testimony and included corresponding limitations. For example, based on testimony regarding the seizures and dizziness, the ALJ included in the RFC that Plaintiff "can never climb ladders, ropes, or scaffolds and needs to avoid concentrated exposure to vibration or work hazards, such as moving machinery and unprotected heights." (AR 22). Consistent with Plaintiff's testimony that he struggled with math and English, the ALJ found he could "have no job tasks that require reading more than simple notes or signs and no more than basic math." (AR 23).

When the ALJ did reject Plaintiff's symptom allegations, she provided reasons for doing so. For example, the ALJ found the alleged limitations with talking were not supported by the record, including reports that Plaintiff had fluid speech and was clear and coherent on exam. (AR 22). Specifically with respect to his seizures, the ALJ rejected the allegation that Plaintiff "was not able to be alone" because he "attended multiple exams throughout the relevant period without issue and improved with treatment." (AR 23). After imposing limitations based on Plaintiff's learning abilities, the ALJ explained that additional limitations were not warranted based on the medical records and the fact that Plaintiff "has been able to work in the past despite these conditions." (AR 23).

The Court finds the ALJ sufficiently explained her reasons for discounting Plaintiff's symptom testimony based on evidence in the record. The Court can readily follow her reasoning and meaningfully review those reasons. *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for

judicial review).

Overall, the ALJ credited Plaintiff's testimony and provided specific, clear, and convincing reasons for the portions of Plaintiff's testimony she discounted. Substantial evidence supports the ALJ's decision such that it must be affirmed.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 21) is DENIED;
2. The ALJ's decision is affirmed; and
3. The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **March 24, 2025**

UNITED STATES MAGISTRATE JUDGE